UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RATHBUN ENTERPRISES, LLC,** | § § § | |
| *Plaintiff,* | § | |
| v. | § § | Case No. _____ |
| **NATIONWIDE GENERAL INSURANCE COMPANY,** | § § § | |
| *Defendant.* | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Rathbun Enterprises, LLC ("Plaintiff"), by and through its attorneys of record, and hereby files Plaintiff's Original Complaint for damages caused by Nationwide General Insurance Company ("Defendant"). In support of such claims and causes of action, Plaintiff would respectfully show this Honorable Court as follows:

**INTRODUCTION**

1. Plaintiff's commercial property, located at 111 W. 7th Street, Hays, Kansas 67601 (the "Property"), sustained severe and increasing loss as a result of a covered weather-related event, namely a hail-bearing thunderstorm, which occurred on or about May 26, 2021.

2. In the aftermath, Plaintiff relied on Defendant, its insurance carrier, to help it recover and rebuild, as per the terms of Insurance Policy No. ACP-BP013200237865, eff. Jan. 1, 2021, to Jan. 1, 2022 (a certified copy of which is attached hereto as Exhibit "A") ("the "Policy"). However, contrary to Defendant's representations to Plaintiff, Defendant improperly adjusted Plaintiff's claim, bearing Claim No. 205172-GM (the "Claim"), thereby depriving Plaintiff of the coverage it purchased from Defendant. As a result, Plaintiff is now required to take legal action to ensure it receives the coverage owed to it by Defendant.

## PARTIES

3. Plaintiff, Rathbun Enterprises, LLC, is a Kansas limited liability corporation with its principal place of business in Hays, Kansas, and is owned by Wes Rathbun, an individual domiciled in the State of Kansas. At all material times, Plaintiff owned the Property and was a named insured on the Policy.

4. Defendant, Nationwide General Insurance Company, is an insurance company domiciled in Ohio that engaged in the business of selling insurance policies, including Plaintiff's insurance policy, within the State of Kansas. Defendant may be served with Citation and a copy of this Original Complaint at its principal place of business, located at 1 Nationwide Plaza #1-36-44, Columbus, Ohio 43215, or anywhere else it may be served with process in compliance with the governing procedural rules for the State of Kansas.

## JURISDICTION AND VENUE

5. This Honorable Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because of the diversity of citizenship of the parties and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. An actual justiciable controversy exists between Plaintiff and Defendant within the meaning of 28 U.S.C. § 2201 regarding whether Defendant breached its duties to Plaintiff in violation of the express terms, conditions and provisions of the Policy, as more particularly described below.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## FACTUAL BACKGROUND

8. Plaintiff Rathbun Enterprises, LLC, owns the subject commercial property, which is located at 111 W. 7th Street, Hays, Kansas 67601.

9. The Property is a rectangular-shaped, single-story, commercial building with approximately fourteen thousand (14,000) square feet of low-sloped roof surfaces covered predominantly with mineral-surfaced modified bitumen ("Mod-Bit") membranes, as well as smaller areas of Ethyl Propylene Diene Monomer ("EPDM") and asphalt shingles. The Property also has a mansard in the in the north/northwest corner that is surfaced with synthetic shake-like shingles and a small entry canopy covered with a Thermoplastic Polyolefin ("TPO") membrane.

10. As consideration for Plaintiff's payment of an annual premium, Defendant issued the Policy to Plaintiff Rathbun Enterprises, LLC, as a named insured.

11. Under the Policy, Defendant agreed to, *inter alia*, insure the Property against direct physical loss caused by hail, subject to all terms, conditions, and exclusions of the Policy:

> **A. COVERAGES**
>
> We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **1. COVERED PROPERTY**
>
> Covered Property includes Buildings as described under paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under paragraph 2. PROPERTY NOT COVERED.
>
>> **a. Buildings,** meaning the described buildings and structures at the described premises, including [in relevant part]:
>>
>>> (1) Completed additions;
>>> (2) Fixtures, including outdoor fixtures;

3

***

### 3. COVERED CAUSES OF LOSS

This Coverage Form insures against direct physical loss unless the loss is:

a. Excluded in Section B. EXCLUSIONS;
b. Limited in paragraph A.4. LIMITATIONS in this section; or
c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS.

*Ex. A, Premier Businessowners Property Coverage Form (PB 00 02 01 18) at 2-3.*

12. Additionally, Defendant agreed to pay any increased cost to complete any additional repairs or reconstruction necessary as a consequence of enforcement of building, zoning, or land use ordinance or law:

### 5. ADDITIONAL COVERAGES

m. **Increased Cost of Construction – Damaged Property**

***

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in paragraphs (3) through (8) of this Increased Cost of Construction – Damaged Property Additional Coverage.

***

*Ex. A, Premier Businessowners Property Coverage Form (PB 00 02 01 18) at 9-10.*

13. On or about May 26, 2021, while the Policy was in full force and effect, the Property sustained direct, physical loss resulting from a hail-bearing thunderstorm, which constitutes a covered loss under the Policy.

14. Hail from the referenced thunderstorm caused direct physical damage to the Property's roof on or about May 26, 2021, including damage to the Property's Mod-Bit, EPDM, asphalt shingle, and metal roofing elements, which subsequently resulted in water intrusion into the building due to the compromised roofing system.

15. On July 15, 2021, Plaintiff retained a public adjuster, Premier Claims, LLC, to file an insurance claim on its behalf and represent it throughout the claims process.

16. Plaintiff timely notified Defendant of the loss through its public adjuster on July 27, 2021, at which time Defendant acknowledged the Claim and assigned it Claim No. 205172-GM.

17. On August 9, 2021, Plaintiff's general contractor, Restore Masters, LLC, and Tyler Boldt of Premier Claims, LLC, performed an inspection of the Property. Based on this inspection, Restore Masters, LLC, determined that a full roof replacement was necessary due to significant hail damage to the Property's roofing system.

18. On August 26, 2021, Bryan Stopiello of Restore Masters, LLC, developed an estimate determining that it would cost at least $342,327.77 to complete the necessary roof replacement, which was then submitted to Defendant in support of Plaintiff's claim.

19. On September 7, 2021, Defendant performed an inspection of the Property through its retained engineer, Michael Metcalf, P.E., of Metcalf Engineering and Environmental, Inc. (hereinafter "MEEI"). Plaintiff's general contractor, Restore Masters, LLC, and Ken Hall of Premier Claims, LLC, were also present during the inspection.

20. On September 27, 2021, Defendant's retained engineer issued a report determining that the Property suffered hail damage on May 26, 2021, consisting of impact damage to the Property's asphalt shingles located in the rear covered porch of the facility. In its report, MEEI also admitted to observing some "ring-shaped blemishes" that "were of a size and shape (rounded) that appear[ed] consistent with hail impact" on the Mod-Bit roofing, but provided an opinion that the

observed damage was somehow caused by "bird droppings". Ultimately, MEEI denied that the EPDM, Mod-Bit membranes, and synthetic mansard shingles sustained "functional damage from hail impact".

21. MEEI also reported that commercially available weather data reported hail of an estimated 1.6" diameter having fallen at the Property, and hail of an estimated 3.6" diameter having fallen within 1 mile of the Property on the date of loss. Additionally, MEEI observed certain of the Property's metal rooftop appurtenances showing indentions consistent with hail possibly as large as 1.5" in diameter. However, MEEI ultimately disregarded this data in favor of a single reported observation of 1.0" hail in the National Weather Service database, ignoring multiple other reported NWS observations of hail ranging from 1.25" to 4.0" near the Property on the date of loss.

22. MEEI further reported that Plaintiff's public adjuster deployed a wheel-mounted moisture detection device during the September 7, 2021, inspection that discovered intermittent areas of substrate moisture; however, MEEI failed to address this issue in its September 27, 2021, report.

23. On or about September 14, 2021, Defendant's adjuster created an estimate including actual cash value ("ACV") damages of $6,055.34 and recoverable depreciation of $476.33, for a total replacement cost value ("RCV") of $6,585.18. This estimate included partial repair of the laminated shingles portion of the Property's roof, combing and straightening of eight condenser units, and replacement of some roof vents and caps; however, it failed to include any repair costs for the hail damage to the Property's mod-bit, EPDM, and metal roofing materials. The estimate also failed to include repair costs for the interior damage caused by water intrusion into the Property due to the compromised roofing system.

24. On or about September 20, 2021, Defendant issued a letter to Plaintiff acknowledging coverage for the claim; however, no payment was issued to Plaintiff based on the Defendant's estimated damages of $6,585.18 being less than the Policy's $10,807.00 deductible.

25. On December 22, 2021, Defendant's retained engineer issued a supplemental report responding to Plaintiff's request, through its public adjuster, that MEEI address the moisture readings taken during the September 7, 2021, inspection that confirmed the existence of small pockets of moisture mostly located between the mod-bit seams indicating water penetration through fractures in the membrane from the hail associated with the subject storm.

26. In its supplemental report, MEEI stated that it has no reason to doubt the accuracy of the Tramex sled-type moisture meter utilized during the inspection and agreed that there may be areas of moisture present within the roofing substrate; however, MEEI ultimately disregarded the existence of moisture under the roofing substrate as irrelevant to its analysis because it had already concluded that there was no functional damage to the mod-bit roofing.

27. On or about June 21, 2022, Plaintiff, through its public adjuster, submitted to Defendant a sworn Proof of Loss and position letter noting significant deficiencies in Defendant's investigation of Plaintiff's claim.

28. In response, Defendant issued a letter on or about July 12, 2022, rejecting the Proof of Loss and advising Plaintiff that its coverage position had not changed.

29. Plaintiff made a timely and complete claim, and cooperated in every aspect of the same, yet this claim has been unfairly adjusted and delayed for an excessive period of time. This delay has now compounded the loss at the Property, all of which stands in stark contrast to the representations made to Plaintiff by Defendant when it purchased the policy. Such conduct exposes Defendant to specific causes of action under Kansas law.

30. Defendant grossly underpaid Plaintiff's Property claim by underestimating the value of the damages during its investigation. Defendant's adjusters prepared an estimate of damages that is deficient based on an improper and inadequate results-oriented investigation that ignored obvious hail damage.

31. Defendant also failed to make timely payment of damages based on the improper and inadequate investigations and analysis performed by its representatives. The Policy unambiguously insures the covered loss and resulting damages.

32. As a result of Defendant's failure to adequately investigate Plaintiff's covered loss and failure to pay for all of the damages as required by its Policy, Plaintiff has been unable to properly repair the Property.

33. As a result of Defendant's failure to properly adjust the claim and its refusal to pay the true value of the covered loss to the Property, Plaintiff was left with no choice but to hire its own professionals, incurring significant costs and expenses associated with proper evaluation and investigation of Plaintiff's covered loss.

34. As a result of Defendant's failure to honor their obligations and duties under the Policy, Plaintiff was also forced to retain the services of legal counsel to protect its rights and remedies under the Policy and as an insured.

35. As of this date, Plaintiff has met, complied with, and continues to meet and comply with, all conditions precedent and duties under the subject insurance Policy. Otherwise, all such conditions and duties have been waived by Defendant.

## **BREACH OF CONTRACT**

36. Plaintiff incorporates by reference all allegations set forth in paragraphs 1 through 35 above as though fully stated herein.

37. Plaintiff entered into a valid and enforceable written insurance contract with Defendant pursuant to the laws of Kansas. Defendant sold, in exchange for valuable consideration, the Policy, whereby Defendant agreed, *inter alia*, to insure, the Property against direct physical loss caused by hail.

38. The Policy outlined contractual obligations to be performed by both Plaintiff and Defendant, including but not limited to, Plaintiff paying policy premiums for its insurance coverage, and Defendant providing said coverage for claims in the event of covered damage.

39. Plaintiff fully performed its contractual obligations and all conditions precedent for coverage, including making timely policy premium payments and timely reporting of covered losses upon discovery, as required by the insurance contract with Defendant.

40. Defendant then materially breached the contract by failing to pay for the full value of the damages to the Property as required under the Policy.

41. Defendant had no reasonable basis for denying the benefits of the insurance Policy and refused to pay the full amount of the loss without just cause or excuse.

42. Due to Defendant's breach of the Policy, Plaintiff has suffered damages by way of unpaid insurance proceeds and benefits, has been forced to retain counsel, and further has been damaged by a sum to be determined at trial and final judgment.

43. Plaintiff's damages include, without limitation, actual damages, interest, and consequential damages, including without limitation, attorneys' fees, costs, resulting damages from required remediation, and other foreseeable costs and expenses because of Defendant's breach of contract.

44. Plaintiff is entitled to all reasonable and necessary attorney's fees pursuant to K.S.A §§ 40-908 and 40-256.

## JURY DEMAND

45. Plaintiff hereby demands a jury for all triable issues and has tendered payment for a jury trial contemporaneously with the filing of this Original Complaint.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that it be awarded actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post- judgment

interest as allowed by law, reasonable attorney fees, costs of suit, all such additional relief specified within this Original Petition, and all such other relief, at law or in equity, to which Plaintiff may be justly entitled.

                                            Respectfully submitted,

                                            **HUNZIKER & BARMORE, PLLC**

By: */s/ Scott G. Hunziker*
     Scott G. Hunziker
     Kansas State Bar No. 20150
     HUNZIKER & BARMORE, PLLC
     The Lyric Tower
     440 Louisiana St., Ste. 1825
     Houston, Texas 77002
     (281) 817-6000 Office
     (281) 816-9025 Facsimile
     Scott@HunzBarLaw.com

     **ATTORNEY FOR PLAINTIFF**